UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| WILLIAM L. TYSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:16CV00814 |
| ) | |
| BB&T CORPORATION, a North ) | |
| Carolina corporation, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## COMPLAINT

The Plaintiff, William L. Tyson, by counsel, for his Complaint against the Defendant, BB&T Corporation, a North Carolina corporation, states as follows:

1. This case comes before the Court because the Defendant BB&T Corporation, a North Carolina corporation ("BB&T"), has breached two restricted stock award agreements between BB&T and the Plaintiff, William L. Tyson ("Tyson"). As a result of the breach, Tyson has suffered damages in excess of One Hundred Thousand Dollars ($100,000.00). In addition, BB&T is relying on an unenforceable and overbroad restriction on competition to curtail the ability of Tyson to earn a livelihood, for which Tyson seeks declaratory and injunctive relief.

### JURISDICTION AND VENUE

2. Tyson is a resident of the Commonwealth of Virginia, residing in the City of Richmond. BB&T is a corporation formed under the laws of the state of North Carolina with its principal place of business in North Carolina.

1

3. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332, in that the parties are diverse and the amount in controversy exceeds $75,000.

4. Venue is proper in this district and division under 28 U.S.C. § 1391(b) because the Defendant is subject to personal jurisdiction in this District and Division, and therefore resides here, and because a substantial part of the events or omissions giving rise to Tyson's claim occurred in this District and Division.

## Facts

5. BB&T Securities, LLC, a limited liability company organized under the laws of the state of Delaware ("BB&T Securities"), is a wholly-owned subsidiary of BB&T. BB&T Securities employed Tyson from 1997 until 2016 in its Capital Markets division. Tyson was a Senior Manager of Capital Markets on February 5, 2016, when BB&T terminated Tyson's employment involuntarily and without cause. After his termination, Tyson was hired by BB&T Scott & Stringfellow, a separate division of BB&T Securities.

6. Before Tyson's involuntary termination, BB&T and Tyson had entered into two substantially identical contracts regarding the award of BB&T common stock. One agreement was dated February 24, 2014, and awarded Tyson Nine Hundred Eighty One (981) shares of BB&T common stock (the "2014 Agreement"). The other agreement was dated February 24, 2015, and awarded Tyson Three Thousand One Hundred Eighty Eight (3,188) Shares of BB&T common stock (the "2015 Agreement"). The 2014 Agreement provided that the award of stock would vest

in three equal portions on February 24, 2015; February 24, 2016; and February 24, 2017. The 2015 Agreement provided that its award of stock was to vest in three approximately equal portions on February 24, 2016; February 24, 2017; and February 24, 2018. The 2014 Agreement and the 2015 Agreement are referred to herein collectively as the "Restricted Stock Award Agreement" and the vesting dates are referred to herein collectively as the "Vesting Schedule." The awarded shares are referred to herein collectively as the "Award." The Restricted Stock Award Agreement was made pursuant to and incorporated by reference the BB&T Corporation 2012 Incentive Plan (the "Plan").

7. The Restricted Stock Award Agreement provided that if Tyson's employment with BB&T Securities terminated involuntarily and without cause, the Award would become fully vested as of the date of Tyson's termination of employment, without regard to the Vesting Schedule.

8. The Restricted Stock Award Agreement also provided that if Tyson were to quit or resign, the Award would continue to vest unless Tyson were to become employed by a "competitor of BB&T or any of its Affiliates" prior to the completion of the Vesting Schedule (referred to herein as the "Anti-Competition Provision").

9. The Restricted Stock Award Agreement provided that the determination of whether any of Tyson's subsequent employment was with a "competitor of BB&T or any of its Affiliates" would be made in the sole discretion of the Plan administrator, and that determination would be final. The Plan defines the Administrator to be the

Board of Directors of BB&T, or, if so designated, the Board's Compensation Committee.

11. On or about December 20, 2015, BB&T Securities notified Tyson that his employment was being terminated without cause, effective no later than February 28, 2016. On or about January 6, 2016, BB&T Securities presented Tyson with a written separation agreement. The separation agreement was fully executed by all parties on January 25, 2016, and provided that Tyson's employment with BB&T Securities ended on February 5, 2016. The separation agreement also provided that, in exchange for Tyson's return of all confidential, secret, and proprietary information, Tyson's release of all claims related to his employment with BB&T Securities and the termination of that employment, and his agreement not to disparage BB&T Securities in the future, Tyson would be paid a lump-sum severance payment, less applicable withholding.

11. At the time of Tyson's termination without cause, only the first portion of shares under the 2014 Agreement had vested and none of the shares under the 2015 Agreement had vested. At that time, however, Tyson was assured by BB&T Securities that, under the terms of the Restricted Stock Award Agreement, his Award would be vested in full without any restrictions.

12. On or about February 16, 2016, after the effective date of Tyson's termination, BB&T presented Tyson with an amended separation agreement, extending his employment to February 29, 2016.

13. On or about March 1, 2016, after Tyson's termination had become effective, BB&T Scott & Stringfellow offered Tyson employment in its retail brokerage. Tyson accepted the offer and was employed by BB&T Scott & Stringfellow until May 2016. As a condition of re-hire, Tyson signed a document presented to him by BB&T Securities that purported to void the separation agreement, as amended, in its entirety. Notwithstanding its statement that the separation agreement was void, BB&T Securities paid Tyson the severance called for under the separation agreement.

14. After Tyson started employment with BB&T Scott & Stringfellow, he learned that BB&T had reneged on its promise to fully vest his shares upon his involuntary termination. Instead of fully vesting all shares without regard to the vesting schedule, BB&T had vested the second portion of shares awarded under the 2014 Agreement and the first portion of shares awarded under the 2015 Agreement. In all other respects, BB&T Securities treated Tyson as if he had been terminated from his Capital Markets position.

15. Effective May 1, 2016, Tyson resigned from his employment with BB&T Scott & Stringfellow. Thereafter, Tyson was employed by Fifth Third Bank as a Senior Managing Director.

16. Fifth Third Bank does not compete with BB&T Scott & Stringfellow.

17. After Tyson had become employed by Fifth Third Securities, BB&T Securities notified Tyson that BB&T had forfeited a significant portion of his Award, Two Thousand Four Hundred Fifty Three (2,453) shares of BB&T common stock,

because BB&T Securities considered Fifth Third Bank a competitor. On information and belief, the determination that Fifth Third Bank was to be deemed a competitor was made by an employee or employees of BB&T Securities and not by the Plan Administrator.

18. Tyson has, on several occasions, asked BB&T to honor the Restricted Stock Award Agreement, but BB&T has failed and refused to do so.

19. As of the date of Tyson's involuntary termination from BB&T Capital Markets, his unvested Award of shares of BB&T common stock was worth in excess of One Hundred Twenty Thousand Dollars ($120,000.00). At current market prices, the wrongfully forfeited portion of the Award has a value greater than Ninety Thousand Dollars ($90,000.00).

## COUNT I

### BREACH OF CONTRACT

20. The allegations of the previous paragraphs are herein repleaded as if set forth in full.

21. The Restricted Stock Award Agreement provided and was intended to provide Tyson with compensation for services he had performed for BB&T Securities.

22. The Restricted Stock Award Agreement is a duly executed contract by and between BB&T and Tyson, imposing legal obligations on BB&T with respect to the Award. Pursuant to the Restricted Stock Award Agreement, BB&T agreed that, in the event of Tyson's involuntary termination without cause, BB&T would as of the

termination date cause the vesting of all shares of common stock awarded to Tyson, without regard to any vesting schedule.

23. Tyson was terminated involuntarily and without cause, effective February 5, 2016, satisfying the condition precedent to BB&T's legal obligation to cause the vesting of all shares of common stock awarded to Tyson, effective on his termination date, without regard to any vesting schedule. The separation agreement between Tyson and BB&T, and its amendments and modifications, do not alter the fact that BB&T terminated Tyson involuntarily and without cause. BB&T Securities did not seek to amend or modify the separation agreement until after Tyson had been terminated.

24. BB&T breached the Restricted Stock Award Agreement by failing to fully vest Tyson's Award, and then by forfeiting a substantial portion of Tyson's Award after BB&T Securities had terminated Tyson's employment, involuntarily and without cause.

25. BB&T's action in forfeiting the Award was dishonest, based on pretext, and in breach of BB&T's implied covenant of good faith and fair dealing.

26. As a result of BB&T's breach, Tyson has suffered direct, incidental, and consequential damages, including but not limited to the loss of the benefit of his bargain and such other damages as are the natural and direct result of BB&T's breach, in an amount to be proved at trial but not less than $100,000.00.

## COUNT II

### BREACH OF CONTRACT

27. The allegations of the previous paragraphs are herein repleaded as if set forth in full. Count II is pleaded in the alternative to Count I.

28. The Restricted Stock Award Agreement provided and was intended to provide Tyson with compensation for services he had performed for BB&T Securities.

29. The Restricted Stock Award Agreement is a duly executed contract by and between BB&T and Tyson, imposing legal obligations on BB&T with respect to the Award. Pursuant to the Restricted Stock Award Agreement, BB&T agreed that, in the event of Tyson's voluntary termination of employment, Tyson's Award would continue to vest according to the Vesting Schedule, unless he became employed by a "competitor" of the BB&T affiliates. The term "competitor" is not defined by the Restricted Stock Award Agreement but give the Plan Administrator sole discretion to call a subsequent employer a "competitor."

30. On May 1, 2016, Tyson was voluntarily terminated his employment with BB&T Scott & Stringfellow. Thereafter, Tyson became employed by Fifth Third Bank, which does not compete with BB&T Scott & Stringfellow. BB&T is therefore legally obligated to continue vesting the shares of common stock awarded to Tyson according to the Vesting Schedule.

31. Notwithstanding this legal obligation, BB&T has breached the Restricted Stock Award Agreement by forfeiting the unvested portion of Tyson's Award on the grounds that Fifth Third Bank was a competitor of BB&T Scott &

Stringfellow. On information and belief, the determination that Fifth Third Bank was a competitor was not made by the Plan Administrator, but by one or more employees of BB&T Securities.

32. BB&T's action in forfeiting the Award was dishonest, based on pretext, and in breach of BB&T's implied covenant of good faith and fair dealing.

33. As a result of BB&T's breach, Tyson has suffered direct, incidental, and consequential damages, including but not limited to the loss of the benefit of his bargain and such other damages as are the natural and direct result of BB&T's breach, in an amount to be proved at trial but not less than $100,000.00.

## COUNT III

### DECLARATORY AND INJUNCTIVE RELIEF

34. The allegations of the previous paragraphs are herein repleaded as if set forth in full. This Count III is pleaded in the alternative to Counts I and II.

35. The Anti-Competition Provision of the Restricted Stock Award Agreement states as follows: "In the event that the Participant's employment with BB&T or an Affiliate is voluntarily terminated by the Participant but the Participant is not employed by a competitor of BB&T or any of its Affiliates prior to the Vesting Dates set forth in Section 3 herein, the Award shall continue to Vest pursuant to the Vesting schedule set forth in Section 3 herein."

36. The term "competitor of BB&T or any of its Affiliates" is not defined in the Restricted Stock Award Agreement, but the Restricted Stock Award Agreement further provides as follows: "The determination of … whether the Participant's

subsequent employment is with a competitor of BB&T or any of its Affiliates shall be made by the Administrator (or its designee, to the extent permitted under the Plan), and its determination shall be final and conclusive."

37. The Anti-Competition Provision of the Restricted Stock Award Agreement is against public policy because it is an unfair restraint on trade that is much broader than necessary to protect any legitimate business interest of BB&T. Moreover, the Anti-competition Provision of the Restricted Stock Award is unduly harsh and oppressive in curtailing Tyson's ability to earn a livelihood, in that it requires Tyson to surrender earned compensation in order to pursue subsequent employment.

38. The Anti-Competition Provision of the Restricted Stock Award Agreement is overbroad and unenforceable because it fails to limit the forfeiture provision to subsequent employment within any specified geographic area and because its temporal limitation is completely unrelated to any of BB&T's business interests.

39. The Anti-Competition Provision of the Restricted Stock Award Agreement is overbroad and unenforceable because it fails to limit the forfeiture provision to subsequent employment involving functions or duties like those Tyson had in his employment with BB&T or its affiliates.

40. The Anti-Competition Provision of the Restricted Stock Award Agreement is overbroad and unenforceable because it utterly and completely fails to define what constitutes a competing business and, instead, grants the Plan

Administrator the power to declare by fiat whether a subsequent employer is a competitor. By placing sole discretion in the Plan Administrator to determine, before or after the fact, whether a subsequent employer is a competitor creates an impermissible *in terrorem* effect on Tyson, who must try to interpret the ambiguous provision to decide whether it is prudent, from a standpoint of possible financial harm and forfeiture, to accept a particular job or whether it might be necessary to incur the cost of resisting BB&T's efforts to assert that the provision covers a particular job. The mere act of subjecting Tyson to such uncertainty offends sound public policy,

41. The Anti-Competition Provision of the Restricted Stock Award Agreement is an unenforceable penalty.

42. There is an actual and immediate controversy which exists between Tyson and BB&T with respect to the enforceability of the Anti-Competition Provision of the Restricted Stock Award Agreement which necessitates declaratory relief.

43. As a direct and proximate result of BB&T's wrongful conduct, as set forth herein, Tyson has suffered and will continue to suffer irreparable harm and injury, including, without limitation, the inability to sell his earned and vested shares under favorable market conditions.

WHEREFORE, the Plaintiff, William L. Tyson, by counsel, prays that this Court grant him the following relief:

   A. Enter judgment in his favor and against the Defendant, BB&T Corporation, in an amount to be determined at trial but not less than One Hundred Thousand and 00/100 Dollars ($100,000.00);

B. Enter an Order declaring overbroad and unenforceable the provisions of the Restricted Stock Award Agreement that restrict his ability to take subsequent employment;

C. In the alternative to an award of money damages, enter an Order enjoining and commanding BB&T Corporation to grant Tyson 2,453 shares of unrestricted BB&T common stock; and,

D. Such other relief as may be just.

**THE PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

WILLIAM L. TYSON

By Counsel

*/s/ Blackwell N. Shelley, Jr.*

Blackwell N. Shelley, Jr. (VSB #28142)
Tim Schulte (VSB #41881)
Shelley Cupp Schulte, P.C.
2020 Monument Avenue, First Floor
Richmond VA 23220
(804) 644-9700
(804) 278-9634 [fax]
Counsel for Plaintiff