IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



WILLIAM L. TYSON,

      Plaintiff,

v.                        Civil Case No. 3:16-cv-814

BB&T CORPORATION,

      Defendant.

## MEMORANDUM OPINION

This matter is before the Court on BB&T CORPORATION'S MOTION TO DISMISS (ECF No. 7). For the reasons set forth below, the motion will be denied.

## BACKGROUND

In the Complaint (ECF No. 1), William L. Tyson ("Tyson") alleges a breach of contract in connection with two restricted stock award agreements ("RSAs") made between Tyson and the Defendant, BB&T Corporation ("BB&T"). (Compl. ¶ 1). The Complaint seeks damages, declaratory, and injunctive relief based on three separate but alternatively pled claims. (Compl. ¶¶ 1, 27, 34). BB&T CORPORATION'S MOTION TO DISMISS ("Def. Mot.") challenges the legal sufficiency of Counts II and III of the Complaint, and requests dismissal of both. (Def. Mot. 1-2). In evaluating the Defendant's Motion, the Court accepts as true all well-pleaded allegations in the Complaint, and views the

facts in the light most favorable to Tyson. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

## A. Relevant Facts

As alleged in the Complaint, Tyson was employed by BB&T Securities, a wholly-owned subsidiary of BB&T, as a Senior Manager of Capital Markets from 1997 until 2016. (Compl. ¶ 5). Towards the end of his employement, Tyson and BB&T entered into two "substantially identical" RSAs.[1] (Compl. ¶ 6). The first RSA was dated February 24, 2014, and awarded Tyson 981 shares of BB&T common stock; the second RSA was dated February 24, 2015, and awarded Tyson 3,188 shares of BB&T common stock. Id. The first RSA provided that the stock award would vest in three equal portions on February 24 of 2015, 2016, and 2017; the second RSA provided that its award would vest in three equal portions on February 24 of 2016, 2017, and 2018. Id.

The RSAs purportedly provided that, if Tyson were to quit or resign from his position, the stock awards would continue to vest pursuant to their original vesting schedule unless Tyson

---

[1] BB&T attached the RSAs to its motion to dismiss; however, in response to Tyson's conclusory objections based on authenticity, BB&T conceded that the Court could rule "without any reference to the RSA Agreements, because all of the pertinent provisions of the RSA Agreements are included among the allegations in the Complaint." (Def. Reply 5-6). The Court will therefore refrain from deciding the issues of authenticity raised in the parties' briefs, and limit its inquiry to the four corners of the Complaint.

gained new employment with a "competitor of BB&T or any of its
Affiliates." (Compl. ¶ 8). The determination of whether any of
Tyson's subsequent employers constituted a "competitor" was to
be made in the sole and unreviewable discretion of the "Plan
Administrator," defined as the BB&T Board of Directors, or, if
so designated, the Board's Compensation Committee. (Compl. ¶ 9).
In the event that Tyson's termination was "involuntary and
without cause," the RSAs provided that the stock awards would
fully and immediately vest. (Compl. ¶ 7). Tyson alleges his
employment was twice terminated in February 0f 2016
"involuntarily and without cause." Id.

Tyson alleges that he received notice of termination
without cause on or about December 20, 2015. (Compl. ¶ 10). He
further alleges that he entered into a separation agreement with
BB&T Securities that was fully executed by all parties on
January 25, 2016. That agreement provided that Tyson's
employment would effectively terminate no later than February 5,
2016. (Compl. ¶ 10). In the agreement and in exchange for a
lump-sum severance payment, Tyson agreed to, among other things,
a "release of all claims related to his employment with BB&T
Securities and the termination of that employment." Id.
Nevertheless, Tyson alleges that, at the time of his
termination, he was "assured" by BB&T Securities that his RSAs
would be vested in full without any restrictions. (Compl. ¶ 11).

3

At that time, he had received only the first one-third portion of the stock award set out in the first RSA. Id.

On or about February 16, 2016 (eleven days after the initially provided "effective termination" date), BB&T presented Tyson with an amended separation agreement, which extended his employment to February 29, 2016. (Compl. ¶ 12). Then, on March 1, 2016, Tyson received an offer of employment by BB&T Scott & Stringfellow, a different division within BB&T Securities. (Compl. ¶ 13). As a condition of accepting the offer, Tyson signed another document that purported to void the previous separation agreement, as amended, in its entirety. Id. Nevertheless, Tyson received the severance called for under the purportedly voided agreement. Id.

Sometime after his employment began with BB&T Scott and Stringfellow, Tyson became aware that "BB&T had reneged on its promise to fully vest his shares upon his involuntary termination," and had instead vested only the portions due under the RSAs as if he had remained continuously employed by BB&T. (Compl. ¶ 14). Effective May 1, 2016, Tyson resigned from his employment, and took a new position with Fifth Third Bank as a Senior Managing Director. (Compl. ¶ 15).

Although Tyson alleges that Fifth Third Bank "does not compete with BB&T Scott & Stringfellow," BB&T Securities notified Tyson that he had forfeited the outstanding portions of

the stock awards by joining a competitor of BB&T Securities. (Compl. ¶ 16-17). Tyson alleges that the determination that Fifth Third Bank was a competitor was made by someone other than the Board of Directors or Compensation Committee. Id. He also alleges that, at the time of his original involuntary termination, the unvested shares promised in the RSAs were worth in excess of $120,000.00. (Compl. ¶ 19). In terms of current market prices, Tyson states that the value of the wrongfully forfeited stock still exceeds $90,000.00. Id.

**B.    Procedural Posture**

Based on the facts alleged in the Complaint, Tyson asserts three alternative claims for relief. Count I seeks in excess of $100,000 for breach of contract on the theory that BB&T was required to fully vest both RSAs when Tyson was effectively terminated on February 5, 2016, and that BB&T's obligation was unaffected by the severance agreements. (Compl. ¶ 23). Count II seeks the same award, on the alternative theory that BB&T breached the RSAs when it wrongfully declared the forfeiture of the outstanding stock awards in response to Tyson's employment with Fifth Third Bank. (Compl. ¶¶ 30-33). Finally, and in the alternative to Counts I and II, Count III seeks both declaratory and injunctive relief. (Compl. ¶¶ 34-43). Specifically, it seeks an order that the provisions of the RSAs restricting employment

are overbroad and unenforceable as against public policy, and, as an alternative to an award of money damages, an order granting specific performance of the RSAs—i.e, an order granting Tyson 2,453 shares of unrestricted BB&T common stock. Id.

In response to these allegations, BB&T CORPORATION'S MOTION TO DISMISS (ECF No. 7) ("Def. Mot.") seeks dismissal of Counts II and III under Fed. R. Civ. P. 12(b)(6). Id. at 1. In its supporting memoranda (ECF No. 8) ("Def. Memo"), BB&T argues that Tyson has failed to demonstrate an entitlement to the $100,000 in damages alleged in Count II, and otherwise failed to satisfy the elements required of declaratory judgment actions under Count III. Id. at 6-9, 9-11. Tyson has filed a MEMORANDUM IN OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS ("Pl. Resp.") (ECF No. 11), and BB&T has filed a reply (ECF No. 12) ("Def. Reply"). The motion is now ripe.

## LEGAL STANDARD

A motion to dismiss under to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint, assuming that the facts alleged are true. Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009). To survive such a motion, the Complaint must provide "only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon

6

which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted). Nevertheless, this rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Instead, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" such that it allows the "court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

Notwithstanding the requirements of plausibility, a likelihood of recovery is not required to avoid dismissal. A motion to dismiss under Rule 12(b)(6) "invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein." Brooks v. City of Winston-Salem, N.C., 85 F.3d 178, 181 (4th Cir. 1996). Indeed, a "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." Twombly, 550 U.S. at 556 (internal quotation omitted).

## DISCUSSION

BB&T CORPORATION'S MOTION TO DISMISS seeks dismissal of Counts II and III of Tyson's Complaint on the grounds that those counts fail to state a claim upon which relief can be granted. For the reasons set forth below, BB&T's Motion will be denied.

### A.   Count II: Breach of Contract

Count II of the Complaint is pled in the alternative to Count I. (Compl. ¶ 27). In the event that the Court does not find that Tyson was entitled to the full stock award due upon his alleged involuntary termination, Tyson alleges that the RSAs were nonetheless breached when BB&T declared the unvested portion of the stock award forfeit due to Tyson's employment with Fifth Third Bank. (Compl. ¶¶ 29-31). Under North Carolina contract law, which both parties agree governs this action, Tyson has plausibly stated a claim upon which relief can be granted. Therefore, BB&T's motion to dismiss will be denied as to Count II of the Complaint.

BB&T argues that Count II fails to state a claim because, even if the facts were true, Tyson "would be entitled only to have his Awards continue to vest" as provided by the vesting schedule in the RSAs. (Def. Memo. 8-9). Because the next vesting date has not yet occurred, BB&T characterizes Count II as "seek[ing] monetary damages to which Plaintiff has no

8

contractual entitlement, [and so] musts be dismissed." Id. at 9. This argument is contrary to North Carolina law, which recognizes the doctrine of anticipatory repudiation, and thus provides a cause of action for breach of contract when one party to a contract unequivocally repudiates any further obligations under the contract.[2] Pappas v. Crist, 223 N.C. 265, 268 (1943).

Accepting the facts alleged in the Complaint as true, it is clear that Tyson has pled a claim for anticipatory breach of contract sufficient to withstand a motion to dismiss under Rule 12(b)(6). Tyson alleges that BB&T notified him that he had "forfeited" any remaining rights in the unvested portions of the stock awards, and further alleges that such a declaration was wrongful and contrary to the language of the RSAs. (Compl. ¶¶ 30-32). Assuming the truth of these allegations, BB&T's statements amount to anticipatory repudiation of the contracts. See Edwards v. Proctor, 173 N.C. 41, 44 (1917); see also Pl. Resp. at 5-7. Under North Carolina law, Tyson was thus entitled to sue for breach, notwithstanding the fact that the time for

---

[2] BB&T's argument also appears to assume that specific performance is the only possible remedy available to Tyson if he were to prevail on Count II. To the contrary, in North Carolina, "[s]pecific performance is available to a party only if that party has alleged and proven that he has performed his obligations under the contract and that his remedy at law is inadequate." Cavenaugh v. Cavenaugh, 317 N.C. 652, 656-57(1986)

performance (i.e., vesting of the stock award) has yet to occur.[3] Id. BB&T's motion to dismiss will therefore be denied as to Count II.

## B.    Count III: Declaratory Judgment

Count III of the Complaint is pled in the alternative to Counts I and II. (Compl. ¶ 34). It seeks a declaratory judgment invalidating the provisions in the RSAs that trigger forfeiture of the unvested stock awards in the event Tyson joins a competitor of BB&T. BB&T seeks to dismiss this claim on the ground that Tyson "has not pled that there is any real and reasonable apprehension of future litigation related to this provision in the Restricted Stock Award Agreements." (Def. Memo. 9). Because BB&T's argument relies on a mistaken view of alternative pleading, BB&T's motion will be denied.

The Federal Rules of Civil Procedure specifically provide for alternative and even inconsistent pleading:

> Alternative Statements of a Claim or Defense. A party may set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a

---

[3]    Rather than exposing a defect in Tyson's claim, BB&T's arguments merely highlight the potential difficulty in assessing damages for the alleged breach at trial. See Restatement (First) of Contracts § 338 (1932) ("If trial is reached before the time fixed for performance has arrived, it may be a little harder to apply the rules of damages to the case, for the value of the promised performance and the extent of future harm must be reached by prediction.")

party makes alternative statements, the pleading is
sufficient if any one of them is sufficient.

Inconsistent Claims or Defenses. A party may state as
many separate claims or defenses as it has, regardless
of consistency.

Fed. R. Civ. P. 8(d)(2)-(3). In this case, Tyson seeks a
declaratory judgment in the alternative to his claims for breach
of contract. In doing so, he has plausibly stated a claim upon
which relief could be granted. (Compl. ¶¶ 34-43) (Pl. Resp. 9-
12).

BB&T argues that the fact that Count III has been plead "in
the alternative" to Counts I and II does not change the fact
that Plaintiff "is truly seeking only a remedy for alleged past
misconduct." (Def. Reply 9). This misunderstands alternative
pleading. Although it is true that a declaratory judgment under
Count III would be inappropriate if Tyson were to prevail under
Count I, the Court does not analyze the sufficiency of Count III
assuming that the allegations supporting the alternative counts
will be proven. Instead, the Court evaluates Count III
independently under the well-settled definitions of the "case or
controversy" requirement. If Count III meets this requirement,
it cannot be dismissed simply because it is brought in the
alternative to other, factually inconsistent claims. See Fed. R.
Civ. P. 8(d).

Case 3:16-cv-00814-REP   Document 24   Filed 02/22/17   Page 12 of 14 PageID# 153

A "case or controversy" exists when the dispute "is definite and concrete, touching the legal relations of parties having adverse legal interests." Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41 (1937). The controversy must be "real and substantial," "admitting of specific relief through a decree of a conclusive character," and distinguishable from "an opinion advising what the law would be upon a hypothetical state of facts." Id.; see also White v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 913 F.2d 165, 167 (4th Cir. 1990). Thus, the question becomes "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and realty to warrant the issuance of a declaratory judgment." Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941).

Applying this test to Count III of the Complaint, it is clear that Tyson has sufficiently pled his claim for declaratory judgment. Should the Court find that BB&T's actions are justified by the letter of the "competition" provisions in the RSAs, Tyson seeks a declaratory judgment that those provisions are overbroad, contrary to public policy, and represent unenforceable penalties. (Compl. ¶¶ 37-41). Declaratory judgment actions to clarify contractual obligations of this sort are common, and the fact that a breach has already allegedly

occurred does not render it non-justiciable. See MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118 (2007).

In MedImmune, the Supreme Court found it to be a close question whether a declaratory judgment action could lie in a contract suit where one party continued to pay as required by the contract, but did so under protest in order to avoid immediate liability. Id. at 122. In addition to ultimately ruling that a live controversy did exist, the Court reasoned that there would have been "no dispute" that the case or controversy requirement was "satisfied if petitioner had taken the final step of refusing to make [the contractually-obligated] payments." Id. at 127. The circumstances contemplated by the Supreme Court in MedImmune mirror those alleged in this case.

The dispute in this case centers around the interpretation and application of several provisions in a contract between BB&T and Tyson. And, in contrast to MedImmune, BB&T has "taken the final step" of repudiating the contract and declaring its intent not to make any further payment to Tyson. Id. at 127. Moreover, BB&T has done so based on its belief that Tyson has violated the anti-competition restrictions set forth in the RSAs. Under such circumstances, a judgment declaring those same anti-competition provisions invalid would conclusively resolve a live, immediate, and substantial dispute between the parties. Moreover, far from remedying "alleged past misconduct," (Def. Reply 9), such a

13

decree would by its terms resolve a present, ongoing violation of public policy. Thus, Count III satisfies the "case or controversy" requirement for declaratory judgment actions, and it is not otherwise rendered non-justiciable simply because it has been plead in the alternative to Counts I and II. BB&T's motion will therefore be denied.

**CONCLUSION**

For the reasons set forth above, BB&T CORPORATION'S MOTION TO DISMISS (ECF No. 7) will be denied.

It is so ORDERED.

/s/         _REP_
_____

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date:  February 21, 2017

14